Thank you, Your Honor. Good morning. I'm Marvin Miller from Mr. Blackman. In our reply brief at Section 3C, we talked about green law, party preclusion. That really doesn't apply. We're not going to address it or rely on it, if you're honest, please. I really don't think it's appropriate in this case. The three things really that have to do with this case are In count to the brandishing, we're aware of the Ashley decision. We believe that in light of both Apprendi and the more recent Alien case, that they have an impact on Ashley, which Ashley didn't address. The other issue is on the conspiracy, which was He's essentially trying to get us to overrule one of our cases. No, Your Honor. Yes, you are. I'm trying to get you to not say that it was wrongly decided, but in the sense of we made a mistake in the way we looked at it, other than for the fact that you did not consider either Apprendi, which is not mentioned in there, nor Alien, which wasn't decided at the time, and on page 143 It doesn't implicate any of those. The brandishing statute refers to a charge, refers to a conspiracy. The brandishing By the word conspiracy, a violent conspiracy in which the gun was brandished, or in which the gun was brandished. Count to charges 924C and 18 U.S.C. 2, specifically, as aiding and abetting. Except 924C has as an element, what's the language of that? 924C is the use or brandishing of a firearm in the course of a crime of violence, which would be a robbery. I don't understand how you can Oh, it's conspiracy. That's what, wasn't it? No, 924C does not require a conspiracy. It doesn't require it. It requires a crime of violence. That's right. It requires a crime of violence. What was charged in this case? It was, in count 2, was charged that he brandished and aided and abetted, aiding and abetting brandishing was the charge of count 2. That's exactly what it was. I'm just not sure how you think these sentencing decisions go in and affect the actual conviction, and it seems to me you're transposing the context there. I would respectfully disagree, Judge Borgeson. Count 2 says that Blackmun did knowingly and intentionally use and carry and brandish a firearm in a crime of violence and it cites Except that's what you left off and we didn't finish our discussion. It says, namely, the conspiracy to interfere with commerce by robbery. That to me is an explicit incorporation of agency. In other words, you don't need to have a citation to Pinkerton. It's a conspiracy is the basis of this particular brandishing. But they say no to the defense lawyer at the time because they say, we're charging you, the grand jury says, with aiding and abetting the use of the firearm in the furtherance of the conspiracy. So the pistol arrow That's another issue of demonstrating liability, but the point is that the brandishing was in connection with a conspiracy, not with just the robbery, as you just suggested. And that's key, because if he's brandishing in connection with a conspiracy, he's a member of that conspiracy. And he doesn't have to be a member of the conspiracy to be a member. We're not talking about aiding. We're talking about the actual offense. Well, Count 1 is separate from Count 2 when considered by a jury, isn't that correct? Count 2, take it alone, is brandishing in connection with a crime of violence, namely conspiracy to commit robbery. And it says that, and he was, does not have to be a member of the conspiracy to aid and abet. That's a fact. Look, forget the aid and abet. Let's just stick with the main crime. No, Your Honor, to aid, Just forget the aid and abetting and address why he wasn't a member of that conspiracy. He doesn't have to be a member of the conspiracy to aid and abet a conspirators use of a firearm in Count 2. Sir, you're double talking. The statute says that you brandish in connection with a crime of violence. The charge in this case was a crime of violence was conspiracy to commit robbery. The question is, why isn't that to answer your case entirely? Because he was a member of the conspiracy to commit robbery, which included the use of a firearm, brandishing a firearm. I don't understand. Forget the aiding and abetting. That's just a method of proving a case through a different mechanism. The method of proving under Pinkerton is different than the method of proving under aiding and abetting. You know, let's see, this is, this is where I depart because, um, the whole point of Ashley, um, is that, um, and Pinkerton conspiracy, um, are very related in that they, they both hinge on foreseeability in order to be liable under Pinkerton conspiracy doctrine. You have to be able to foresee the acts that the conspirators are going to commit. And in order to be liable under aiding and abetting, you would have to understand or know what you were, what you were aiding and abetting. But what I'm saying is they both, and the reason that, you know, you can, you can try to make this as Byzantine as you want. But they both ground out and they both bottom out on the whole notion of foreseeability. And that's true whether you're talking about aiding and abetting, where you have to foresee the acts that the principles are going to undertake. Or you can't be guilty of aiding and abetting if you're ignorant, completely ignorant of what you're aiding and abetting. And it's the same thing with Pinkerton conspiracy. One of the elements of that is you've got to be, uh, the brandishing has to be reasonably foreseeable. And then you get down, Mr. Miller, to exactly whether these elements, whether it's aiding and abetting or whether it's Pinkerton liability, whether these elements were met. And you look at Blackmun's place in this whole scheme. And in terms of foreseeability, he knew exactly what was going to happen. They, they talked to him about the fact that firearms were going to be used to rob, to rob those Apple vans. The discussion was had, um, in, in his presence. There's, may I address some of that, Your Honor? Yes, you may. But what I'm saying is there's more than sufficient evidence for Judge Brinkham at a fine that these elements were, were, um, were, were, were, were, were satisfied because he- I understand the fact, Your Honor. That's not the issue. He knew they were armed robberies. He absolutely knew it. That's not the issue. It was part of the group. Yes, it is. Not in my appeal, it's not. In my appeal, the issue is that there is, and foreseeability is not a factor in aiding and abetting. Knowledge is plus an action with that knowledge to make it happen. That's, but that's a closely related doctrine to foreseeability. It's not the same as, and in the law, there's a difference because the courts have said- Your argument is that they didn't charge Pinkerton in the indictment. That's correct. But they did. They used the word conspiracy. Now, what does that mean? What the indictment says, and I understand where the court is on this, but what the indictment says is that you aided and abetted the use of a firearm in a conspiracy and under the law, a defendant can aid and abet the use of a firearm in a conspiracy without being a conspirator, and that's clear. Except they charged him with being a conspirator, an aid of a conspiracy, that's charged. You're on notice. You can defend it. Your whole issue is whether I got Pinkerton notice. He did get- It's right in the indictment. I understand your position, Your Honor, but Judge Niemeyer, he wasn't told that he was a member of the conspiracy. His membership in the conspiracy isn't mentioned anywhere in count two. He is told- Sure it is. No. He brandished a firearm in connection with a conspiracy. He did it by aiding and abetting the brandishing of a firearm in a Hobbs Act conspiracy. He did it directly. He did it much more directly. He didn't brandish the firearm. That's an agreed fact. No, the conspiracy did, and they talked about it. They unloaded the guns. They didn't use bullets. They put the clip in. They talked about how they're going to use the gun to intimidate and get them out of there. There's just no question that that was part of the conspiracy. Whether it's part of the conspiracy or not, and whether or not he was a conspirator, the indictment told him that he was an aider and abetter of a conspiracy. Why don't you address that it also said he was brandished in connection with a conspiracy? It said the way that he brandished, since he didn't do it himself, the way he did it, according to the grand jury, was he did it by aiding and abetting its brandishing in the conspiracy. You know, in the indictment, and you know this, there are many, many other circuits that have said that you don't need in the kind of magic words that you want. I happen to agree with Judge Niemeyer that the conspiracy theory was charged, but you don't even need to charge it. The cases that have said that, which are on 143 of Ashley and page 19 string site in their reply brief, do not address Apprendi. And in Apprendi, the court said that what needs to be proved, any fact which needs to be proved for punishment is an element. You're not contesting the punishment here. It's not. No. But the facts needed to punish include the facts needed to convict. Well, that may be true. But what I'm saying is that you've got a long string of circuit law. And we're talking about the conviction here and conviction and sentencing are very, very different things. I'm talking about the conviction. Yeah, you're talking about the conviction. That's right. And the question you have is, did Pinkerton conspiracy need to be charged in the indictment? And the response is number one, a conspiracy theory was charged in the indictment. And number two, it didn't need to be because the the law of this circuit, the law of many other circuits are that it isn't necessary to explicitly cite Pinkerton theories of liability in the indictment. And none of the cases that have said that all of them rely on pre Apprendi and pre Aileen decisions, none of them have addressed whether or not any fact is the issue. Ashley came up to the Supreme Court, I think, well after Apprendi had been handed down. It was a quick denial of certiorari. They're not buying it. But they overturned Harris after Ashley in 2010, 2013 in the Aileen case. And in Ashley, the Apprendi issue was not raised. It wasn't briefed, it wasn't argued, and it wasn't addressed by the court. What I'm saying to you is that you have with Elaine, that's a question of whether you're eligible for some mandatory minimum. But you're not contesting a mandatory minimum here. And you're not saying that the judge exceeded the statutory maximum. And you're not bringing in an Apprendi question. You can't be sentenced, period, if you're not guilty. And so the facts necessary to convict are the facts necessary to punish. And that issue hasn't been addressed in any of the cases. And I'm now getting into the little bit of time I've got left for rebuttal. Yes, Your Honor. I just wanted to, I assumed from your, the way you broke up your time that you were going to address forfeiture on rebuttal. I do want to address it on rebuttal. Very briefly, they- I, but you're out of time, so you're at the- All right. Yeah. I want you to, I want to talk about the forfeiture part of it too. But you have some time for rebuttal, and we'll give you a chance to do the, to do, to take up the forfeiture matter. I can't get a chance to pull out my argument with that one, Your Honor. I appreciate it. Thank you. Morning, Your Honors. I'm Wynn Grant with the US Attorney's Office here in Richmond. I plan to talk about all three issues, but if the court would like to move right to the forfeiture, that's really why I'm here. Because that's my specialty. I would like to move right to the forfeiture question, if you don't mind. Yes, sir, I'm happy to do so.  And the reason we're here is because the district court apparently believed otherwise that it was discretionary. We made every effort to try to fix that before, before coming here with the motion that we filed after sentencing, where we asked the court to correct it under Rule 35, and that was unsuccessful. So that's, that's why we're here. The applicable statute is 28 U.S.C. 2461 C, which provides that if the defendant is convicted of an offense giving rise to forfeiture, the court shall order forfeiture of the property as part of the criminal case. Forfeiture was noticed appropriately in the indictment under Rule 32.2, that's the only requirement. At the conclusion of the trial, the district judge asked, is there going to be any forfeiture in this case? There is a forfeiture charge in the indictment. The prosecutor responded, there is, Your Honor, correct. I believe it's 130,000. I believe Ms. Landino testified to approximately 130,000. So whether Your Honor wants to take it up at this point or at sentencing as either forfeiture or restitution, we would ask to take it up at the appropriate time. Was the district court under the apprehension that it was an either or matter? I don't think so, Your Honor, but I understand- What was the misapprehension that led to the error, in your view? The misapprehension is, I believe the district court believed that forfeiture was discretionary. Not that it was forfeiture or restitution, but that forfeiture is always discretionary. And I believe from the comments by the district court at the Rule 35 hearing, the district court was also under the apprehension that- Well, it would be discretionary with respect to some offenses? I mean, the question is whether something's a listed offense? Correct. It's really not discretionary. If the offense is covered by a forfeiture statute, it's mandatory. If it's not covered by a forfeiture statute, it's not permissible. Enrico, here, is the statute that takes the forfeiture provision and covers the robbery? It's actually this provision in CAFRA, the Civil Asset Forfeiture Reform Act in 2000, which is found in Title 28. Curiously, not Title 18 of United States Code that I just referred to, which says the court shall order forfeiture of the property. If it's an offense covered by a forfeiture, it's a very circuitous- I thought the question was whether something was a specified unlawful activity. And that is determined, that's what you decide before you get to 28 U.S.C. 2461. And I thought that where, in your view, is the definition of specified unlawful activity? That's in 18- It's the question of what's listed in 1961.1, isn't it? Correct, Your Honor. That is correct. And in Section 1961.1, Section 1951, which is a robbery, is specifically mentioned. That is correct. I mean, you have to go through the different steps, beginning with the forfeiture statute in 981, and then going to robbery, which is under 1951, and then finding if 1951 is included in 1961. And I gather that's the various steps that we need to undertake. Is that correct? That is correct. It's footnote five in our brief on this, and it's a circuitous route- I don't understand why it was put in a footnote, because that's a pretty important point. I guess because I do it all the time, I've become accustomed to it. But I understand it's an arcane and circuitous route for anybody who doesn't- Well, it should have been in the text of your brief. And I will heed that advice the next time around. But it clearly is an SUA offense. It's mandatory. It was charged in the indictment. And I think the other rationale that the district court suggested, without really saying it, was she thought that the defendant was unable to pay the forfeiture, and therefore she wasn't interested in imposing something that she thought probably didn't have any real meaning, when he didn't have the financial ability to pay, because she made that comment as well. Confused forfeiture and restitution there? Well, she did to a degree, but both are mandatory, and both do not allow for the consideration of ability to pay. Well, certainly 981A talks in terms of, is subject to forfeiture, and talks in terms of shall. And 981 is a civil forfeiture statute, Your Honor. But it's the 28 U.S.C. 2461C, where Congress said, for every statute for which there is a civil or criminal forfeiture, the court may now impose criminal forfeiture. And didn't say it may, it said the court shall impose forfeiture. So 2461C is where the mandatory aspect is reinforced in the statute. Okay. So again, I think it was the district court's misapprehension that ability to pay- That if the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property. Correct, Your Honor. And that's consistent with Monsanto, which said that 25 years ago in the context of 853- So you still need to go through those other steps to find out if it's, whether the offense is a qualifying offense. Correct, Your Honor. And in this case, the robbery conspiracy qualifies, as the court just said, because it's listed as a RICO predicate. Under the different provisions in Title 18. Yes, sir. 1961, the RICO predicates is where that statute is specifically listed as an SUA or The shorthand method that Congress used to bring into criminal forfeiture all of these offenses was with that cross-reference to the SUA definitions. There are a lot of different statutory provisions that feed in here, aren't there? There are. Is 2461 and 981 and there are at least four. Correct, Your Honor. 1951 and then 1961. I mean, is my understanding correct in your view that we have to take account of all four of those? I think you do. I mean, it's like a road map. You have to follow the map to its conclusion to get to the best of it. From 2461, we get the mandatory element. And then from 981, we get the idea that what's critical is the specified unlawful activity. And then we get from 951, the definition of robbery, and then from 956, and section 956 defines specified unlawful activity as something listed in 1961. And then when we go to 1961, we find that 1951, which is robbery, is explicitly listed. So I've counted at least five different steps that probably need to be taken. I gather that's your view. Correct. But the fact that there are these different steps, it might seem to make it unclear, but it actually isn't. The steps follow quite logically from one another and they incorporate by reference. And the road map, even though there are five turns to take, the road map is still pretty clear. And I would add to that, it's mandatory, it's clear, but there's only one destination that you can arrive at if you follow the map. And you don't have an option to detour, to not get to the end of the line, which says the court shall order forfeiture of the proceeds of the offense. And as I said, I believe the district court believed that it had discretion or that it was of no point. She made a couple of comments, both at the sentencing hearing, but primarily at the Rule 35 hearing where she denied our request to correct this before coming here. That she just didn't think there was any point in that, and she declined to really consider the forfeiture. The amount was never contested. The amount was what it was. It was a conservative amount. It was the amount of money that the only witness who testified, and there was no even cross-examination of that witness, Ms. Landino, said it was $136,000 and some change. I guess Judge Brinkman didn't get to the Eighth Amendment claim, but these Eighth Amendment claims are not faring all that well in forfeiture cases, and especially when Blackmun is not a minor player. If he'd had some peripheral or incidental part to play in the conspiracy and was thought not to be culpable and was sort of unaware of the full extent of what was taking place or the full extent of the proceeds that were going to be derived, maybe you could have some sort of Eighth Amendment challenge, but this seems a particularly inappropriate case, given his awareness of everything that went on. I quite agree. The Jalloram case out of this court a few years ago suggested that there may be that rare instance where someone who gets a very small portion of the proceeds but is charged with the joint and several liability with his co-conspirators. I mean, this person was the fence. He was. He clearly got, I would presume, an equal share of the proceeds along with everyone else, and we don't know precisely, but he was. The fence is a pretty important cog in all of these conspiracies, because that lets you cover your tracks and realize the proceeds and everything else. The fence, you could say, is almost as important to the completion of the conspiracy as the gunman. Well, I would take that one step further and say that the fence is absolutely essential, because this was not a crime of some sort of political statement or some crime of passion. This was a crime of greed. It was to achieve financial gain. If you can't sell the property that you've just stolen... He's got the property in his hands, and he's selling it. And he knows what the proceeds are, and to raise an Eighth Amendment argument, it's a little jarring. I would say he is the least eligible person to raise an Eighth Amendment argument under the circumstances, when, as the court just said, he actually received 100% of the proceeds. There is an irony in a fence raising an Eighth Amendment argument. I think you've made my case for me. I won't have to belabor that point. If there are no other questions on the forfeiture, I'll respond to it. I have a couple of minutes I've reserved for rebuttal on this point, if need be. Thank you. Counselor alluded, Your Honors, to the Rule 35, but they said in their reply brief that they weren't going to rely on the Rule 35, so I'm a little confused. I don't understand. Tell us why the opposing counsel, in your view, is wrong on the forfeiture point. Two things. First of all, they waived it. As in the Alamundi case, in which you participated, Judge Niemeyer, that they cited in their 28-J letter on Tuesday, the court recognized that the government can limit forfeiture and can waive forfeiture. You referred to the Arnett case, where they breached a plea agreement on a supposedly mandatory forfeiture by seeking a forfeiture that was inconsistent with the agreement. So if it's mandatory, it can't be mandatory and discretionary whether they get to waive it or not. It's like they can't waive a seven year mandatory minimum on a brandishing charge. In this case, when the case came on for sentencing, and if you look at Rule 2460, at Statute 28 U.S.C. 2461, Modes of Recovery, it says when the forfeiture is addressed, and it shall be part of the sentencing order. It doesn't say that forfeitures shall be ordered. It says they shall be part of the forfeiture order. If you want mandatory language about what must be forfeited with no discretion for the judge whatsoever, you find that in 3554, which says in addition to the sentence, you shall forfeit. You find it in, they cited 21 U.S.C. 853. It also has language that says in it that they shall forfeit. Mr. Miller, how do you, I mean, you're very creative, but I don't understand. Here's the point, Your Honor, if I may. That's why I like it when you come up here, but I don't understand how you get around a sentence. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture as part of the sentence in the criminal case. There are two parts there. One, they have to ask for it. And they waived it because before sentencing, they filed nothing. At sentencing, they filed nothing. They did file later the affidavit and- Stop. You're going too fast. All right. At the sentencing, it says, is there anything further you need? And Ms. Birnbaum says, recalls the indictment included a notice of forfeiture. I know Your Honor has addressed the issue with regard to restitution, but if I could pass forward documents as they relate to forfeiture. Correct. Court, what are you seeking in forfeiture? Your Honor, the same amount. There have been no specific assets identified, however, at this point. Court, well, then I'm not entering a forfeiture in this case. And she talks about there, as she did in the later June hearing, about that he's an indigent, appointed because he can't afford the cost of appeal. He had no assets, as the PSR establishes. He couldn't afford to pay anything. She talks in terms of Eighth Amendment- She doesn't say that on the court. She- I'm not entering forfeiture. Mr. Birnbaum, yes, Your Honor. The court, all right, Mr. Miller. Mr. Miller, yes, Your Honor. Anything other? On the restitution, would Your Honor like to waive interest? Court says yes. That ends it. But later in June, when they're coming back to her and asking her to enter a forfeiture, she does say about his- she does address his indigency. She does address the fact that she ordered restitution. And the Eighth Amendment is not based on the knowledge and culpability of the defendant, because in the Bajikakian case, which I'm sure I'm mispronouncing in the decision by Justice Thomas, where the guy was taking $357,000 out of the country, and the case said that to forfeit all of that amount, which the law allowed, and he knew how much money he had, he had it there. So your argument is that this is an Eighth Amendment argument? There are two issues. There are two issues. The question to you was why shouldn't a forfeiture have been entered? And now you're talking about Eighth Amendment. Two reasons. There are two reasons why it shouldn't have been entered. One is they waived it by not pushing that it was mandatory at sentencing. I just read you where they said, and she denied it. They did not address the fact that it was mandatory, and they didn't offer for the record or proffer for the record what they would have established by putting forward the documents that they said they had. Your Honor, may we file these in the record? If a defendant fails to put forward something in the record there, and you don't know what the witness would say or what the evidence would be, then the defendant's forfeited the issue. How can this be an Eighth Amendment violation? As I understand it, the maximum fine here is $250,000 per count. The fine- Can I just finish for one second? Yeah. And I thought the government requested forfeiture in the amount of $136,000, and that's well below what the statutory maximum is. The fine range in this case was between 60 and 150. The restitution and fine together would have been 260-some thousand dollars. And that, in a combined situation, if you do the analysis that Justice Thomas did, where the amount forfeited would exceed the fine, and I would contend that the fine range that the PSR had is what the fine range would be in this case. There's a difference, I think, and I'm not, I say that just as positing, but it seems to me there's a difference where you use the farmhouse to forfeit the farmhouse, then you can make that argument. Here, the entire assets seeking to be forfeited were stolen. They stole a billion dollars from the bank. Seems to me they have to forfeit that back, don't they? He doesn't get to keep the product of his crime, the left product. He's not keeping the product because he's paying it to the victim. So he's not keeping it. Hold it, that's restitution. We're talking about forfeiture. The idea of forfeiture here was to forfeit what he gained as part of the crime. Now, the amount, $136,000, seems to me can never be related to a fine when it's the product of the crime itself. If I steal the diamond, this world's most valuable diamond, don't I have to forfeit it back? I don't get to keep it. If you stole the diamond, then the diamond goes back to the victim. The government's forfeiture encompasses loss to the government. Here, there was none. The government's forfeiture is to make the government hold for things that it lost. It is a punishment. They agree in their brief that it's a punishment. As a punishment, it has to have some reasonableness to it. It's not as though they went to his house and he had the goods or he had the money. He had nothing. He was impecunious. So he is restituting the victims. They want to take the same amount. Your argument now has shifted to say they can't impose both restitution and forfeiture for the same amount. I'm saying that in this case- That's a different argument altogether. I'm saying in this case, what the judge said was at the June hearing that he's got the restitution and he doesn't have any assets. And she's right about that. And what I'm saying is that that is an Eighth Amendment issue because the Eighth Amendment doesn't apply because you're not really guilty. The Eighth Amendment applies about whether or not the punishment, which is what forfeiture is, is greater than necessary under the circumstances for the defendant and the crime. And there is an Eighth Amendment basis in this case for this impecunious individual to be able to pay the victims their due, which he's obligated to do once he gets out, and then to impose on him an additional obligation to pay the government, which gets paid first and the victims come in second. The whole reason does the statute make any kind of this sort of exception that you're talking about? It says that the shell ought to forfeiture. And part of the reason the statute says it shall ought to forfeiture and it doesn't talk about all these exceptions and restitution with forfeiture and interrelationships of restitution and forfeiture. And part of it is that if you're under a restitution order, the victims don't often collect. And part of the reason they don't collect is because they don't have the resources sometimes to go into court and collect. The government simply has superior resources in terms of collection. And I don't see in the statutes where Congress has made restitution and forfeiture mutually exclusive. The 2461 statute says it shall ought to forfeiture. And you can take it from there and you can debate the amount and you can do these other things, but I don't see that a district court is not permitted just to rely exclusively on restitution if this is a forfeited offense. The district court is entitled to rely, as did the district court in the Bajikakian case, on the forfeiture being requested being excessive in the district court's view. And they're entitled to make that decision, notwithstanding Congress's statutory requirements. The statute is key to whether the individual is convicted in the offense. The same language applied to that Supreme Court decision. And they said that's what the statute says is to happen, but we believe applying the statute under the circumstances of that case violated the Constitution, which trumps the statute. And that's what Justice Thomas wrote in his opinion. The statute is clear and the circumstances here could not be less sympathetic. Honest goodness, as Judge Niemeyer pointed out, it's stolen property. The request is relatively modest in terms of the statutory maximum. This person was the fence. He knew exactly what they were doing. If there's no forfeiture here, we've simply shredded the whole statutory scheme. Not necessarily, Your Honor. In a situation where a court has discretionary authority to apply constitutional principles notwithstanding a statute, which is what the court did in this case. Your argument is that ordering restitution and forfeiture, in this case, is excessive fine. It would be, in this case, an excessive fine. And the other issue would be that the government's failure to provide the court with information at the time of sentencing, which is when these issues are to be addressed, that would justify a decision for forfeiture, and the amount is a waiver of it. Their failure to say to the court that, in their view, it's mandatory is a waiver of it. She ruled at it. She just basically said it's denied. She did not get from them, A, it's mandatory. She did not get from them the proof of the amount. They had the documents. They didn't tender them to the court. They didn't file them before court. They didn't serve them on the defense before court. They didn't serve them on defense in the courtroom. Thank you, Mr. Miller. Thank you, Your Honor. Mr. Grant, you've got three minutes. I promise not to take it all. Could you just address that last point, the waiver? He says you waived it because you didn't present the papers to the court. Well, that's just simply not correct is their response. We did present the papers to defense counsel in the courtroom that day. We tried to offer them up, and I think the record reflects that we tried to offer them up, and the district judge was like, I've made my decision. Don't waste my time. I don't want to see it. And confirmation . . . Did you ever file the papers? We attached them to a Rule 35 motion as an exhibit. When we filed the motion five days later explaining why the district court was wrong and forfeiture was mandatory, that's in the record. And a third confirmation of what we tried to do was at the Rule 35 hearing, the judge made that comment like you didn't push back enough. You didn't do what you needed to do. And Mr. Birnbaum specifically corrected the court and said, Your Honor, that's not correct. We had the papers in court. We offered them to the court, and you had already ruled and did not receive the motion. But the other point I would make is that there's no requirement of a motion. Rule 32.2, the forfeiture rule, doesn't require the government to file a motion for forfeiture because, again, it's a mandatory provision of a sentence. There's no requirement to file a motion for a restitution or a motion for a mandatory minimum sentence or a motion for a mandatory special assessment. The law requires the court to impose it, and could we have done a better job to maybe argue more forcefully? Of course, we can always do better, but I think we did more than enough to preserve the point in this case. And I could say more about the Eighth Amendment analysis, but I don't think I need to. This was a forfeiture of the proceeds of the offense well below the test which the court— He also argues that restitution and forfeiture are duplicative and therefore excessive. That view has been rejected by every circuit that has addressed that. I think nine circuits have concluded that is absolutely not the law. No circuit has ever held that to be the law. And forfeiture is punitive. Restitution is compensatory. They serve two different ends. And as Judge Wilkinson noted, we often use forfeiture because of the much better tools to collect property from a defendant to recover assets. Many times you give those assets to the victims. We do. You don't just necessarily—you're not obligated to, but in many instances that's what happens. The victims of a crime can't often—they don't have the legal wherewithal. They can't hire attorneys many times. The victims of crime sometimes, they're very impecunious. They're poor, and they can't hire attorneys and go through the long legal slog to get what's coming to them and to collect on the restitutionary judgment. And the government does sometimes have the additional resources, and it turns those funds over to the victims, and it's one way in which people who've been victimized by crime are able to have some of those financial proceeds that are rightfully theirs restored to them. I couldn't have said it better, and I see my time is up. Thank you very much. We'll adjourn court and come down and read counsel. This honorable court stands adjourned, sign and die. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Allyson K. Duncan